



# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SAN FERNANDO VALLEY DIVISION

In re

Ceasar Gaite Bernales,

                Debtor.

Case No. SV 05-50082 MT

Chapter 7

**AMENDED MEMORANDUM OF
DECISION AND ORDER**

I.   Introduction                                                                          3

II.  Preliminary Matters                                                                    4

III. Factual Background                                                                     4

IV.  Discussion                                                                             9

     A.  Prohibition on Offering Legal Advice                                               9

         1.  What Constitutes Legal Advice                                                 10

         2.  Whether New BAPCPA Provisions Allow Limited Practice of Law                    13

         3.  CCSA and Mr. Bohl Improperly Gave Legal Advice                                17

             a.  Filing Fee Advice                                                         17

             b.  "Facesheet Filing"                                                        18

             c.  Motion for Extension of Time                                              22

             d.  Legal Interpretation of the Deadline                                      22

             e.  Advice Regarding the Debtor's Duties                                      23

             f.  Means Test Advice                                                         24

             g.  Inclusion of All Creditors                                                25

             h.  Questionnaire                                                             26

             i.  Selection of Exemptions                                                   27

             j.  Website                                                                    27

     B.  Other Violations of § 110 Involving Lack of Required Disclosures                   29

         1.  11 U.S.C. § 110(b)(2)(B)                                                       29

         2.  11 U.S.C. § 110(h)(2)                                                          30

     C.  Sanctions                                                                          30

         1.  Fines or Damages to be Paid to the Debtor and U.S. Trustee                     30

         2.  Injunction                                                                     31

V.   Conclusion                                                                             33

1  **I.      Introduction**

2        This case presents the issue of the lawful parameters of activities by bankruptcy

3  petition preparers following enactment of the Bankruptcy Abuse Prevention and

4  Consumer Protection Act of 2005 ("the new Act" or "BAPCPA").  Immediately before the

5  effective date and following enactment of BAPCPA, the bankruptcy courts have seen

6  increased numbers of unrepresented debtors file bankruptcy.[1]

7        This case involves Consumer Credit Services of America, Inc. ("CCSA"), a

8  Florida-based bankruptcy petition preparer corporation which operates principally

9  through its website: http://www.ccsofamerica.com/.[2]  Advertising nationally through

10  multiple media outlets, CCSA attempts to draw in the business of potential bankruptcy

11  debtors across the country.  CCSA and its employee and officer, Greg Bohl, have

12  repeatedly engaged in the unauthorized practice of law and violated the Bankruptcy

13  Code provisions regulating bankruptcy petition preparers.  They have given legal

14  advice, attempted to explain court procedures, suggested filing strategies, used

15  unlawful questionnaires, and selected exemptions.  To make matters more dangerous,

16  CCSA and Mr. Bohl have done so without any real apprehension that what they are

17  doing is the unauthorized practice of law.  To the contrary, they appear to be quite

18  proud of their "innovative" business model and strenuously argue that they are one of

19  the "legitimate" bankruptcy petition preparers in the marketplace.

20

21  _____

22        [1]      The proportion of debtors unrepresented by counsel in this district rose to
approximately 27% of all debtors last year.  Shortly before the effective date of the new
23  Act, over 50% of the debtors were unrepresented.

24        [2]      The name Consumer Credit Services of America, Inc. is <u>not</u> to be confused
with Consumer Credit Counseling Service (CCCS), a certified credit counseling agency
25  under 11 U.S.C. § 111.  The choice of the CCSA name and its similarity to an established
and well-respected non-profit group raises additional questions which were not explored
26  here.

## II.    Preliminary Matters

The findings contained herein are based on the two hearings held in this matter and all documents filed in the court record. CCSA has not appeared at any of the several order to show cause hearings, despite having been noticed of them. Under LBR 2090-1(g)(1), "[a] corporation, partnership or unincorporated association may not file a petition or otherwise appear without counsel in any case or proceeding" except in circumstances not relevant here. Under this rule, Mr. Bohl's telephonic appearance does not qualify as an appearance on behalf of CCSA as Mr. Bohl is admittedly no lawyer.[3] Thus, CCSA filed no objections and made no appearance.

Additionally, Mr. Bohl chose not to appear in person, despite ample warnings that he could not testify telephonically. By not appearing in person, Mr. Bohl was advised that he waived the right to testify, put forward evidence, or cross-examine any witnesses who testified at the hearings. He was, however, allowed to argue telephonically and invited to file any documentary evidence he wished, which he did.

## III.    Factual Background

Sometime in mid-November 2005, Ceasar Gaite Bernales contacted CCSA to assist him in filing for bankruptcy. He found CCSA, which is operated out of Florida, online through its website. Bernales's assigned "case coordinator" was Greg S. Bohl, a non-attorney.[4] On November 22, 2005, CCSA e-mailed Bernales "emergency

---

[3]    Mr. Bohl acts like one, however. He often referred to his experience working for a local bankruptcy attorney and with bankruptcy trustees. He also frequently cited to and analyzed cases at the hearings, and apparently is at least a co-author of the website.

[4]    Although Mr. Bohl's is a self-described "case coordinator" and an employee and officer of CCSA, he is also legally a bankruptcy petition preparer himself under 11 U.S.C. § 110(a)(1) ("'[B]ankruptcy petition preparer' means a person, other than an attorney for the debtor or an employee of such attorney under the direct supervision of such attorney, who prepares for compensation a document for filing."). Here, there is no dispute that Mr. Bohl prepared Bernales's petition for filing for compensation. Therefore, he is a bankruptcy petition preparer. Note that the language of section 110(a)(1) contains

-4-

1  bankruptcy documents," including a Voluntary Petition, a Statement of Social Security

2  Number, a Verification for Creditor Matrix, an Application to Pay Filing Fee in

3  Installments, and an Order Approving Payment of Filing Fee in Installments.

4      On November 23, 2005, Bernales filed the Petition and the Verification for

5  Creditor Matrix.  Bernales's request to pay the filing fee in installments was denied.

6  Bernales promptly amended his petition and paid his filing fee in full.

7      That very same day, the clerk's office issued a Notice of Case Deficiency under

8  11 U.S.C. § 521(a)(1) and Bankruptcy Rule 1007 and a Case Commencement

9  Deficiency Notice.  These notices advised the Debtor to file the remaining required

10  documents within fifteen days or face possible dismissal.

11      After receiving these notices, Bernales and CCSA contacted each other back

12  and forth by e-mail.  CCSA advised the Debtor it would provide the missing documents

13  "a day or 2 prior to the deadline."  By December 8, 2005, the filing deadline, Bernales

14  still had not received the remaining documents.  Instead of receiving the documents or

15  a response, he received an e-mail dated December 9, 2005, explaining that his case

16  coordinator, Greg Bohl, was out on medical leave.  This e-mail requested Bernales to fill

17  out a Questionnaire and return it by fax to enable CCSA to prepare the remaining

18  bankruptcy documents.  Bernales faxed over a completed copy of the Questionnaire.

19      After Bernales faxed over the Questionnaire, he asked CCSA by email whether

20  he "need[ed] to contact the court to get an extension on the 15 day deadline."  CCSA

21  replied with a question: "Is it possible that you can file a request for an extension of time

22

23  no explicit exception for mere employees of bankruptcy petition preparers as it does for
employees of attorneys. Congress clearly knew how to exempt employees of bankruptcy
24  petition preparers.  Id.; see also 11 U.S.C. § 101(12A)(A) (providing that employees of
bankruptcy petition preparers are not subject to the "debt relief agency" provisions).
25  Congress's failure to exempt employees of bankruptcy petition preparers in section
110(a)(1) suggests that Congress had no such intent. Further, any contrary reading would
26  allow individuals to more easily circumvent the provisions of section 110.

1    to submit your bankruptcy schedules and other documents until Monday [December 12,

2    2005]? . . . That will automatically extend the time until it is ruled on and will give us

3    more time to finalize your documents." After receiving this suggestion, the Debtor

4    lodged with the Court an Order Pursuant to Extending Time to File the Required

5    Documents, which would extend the filing deadline to December 16, 2005.

6         CCSA finally e-mailed some of the remaining documents to the Debtor on the

7    afternoon of December 13, 2005. Bernales finally filed these documents on December

8    15, 2005. The Court signed Debtor's proposed order to extend the filing deadline on

9    December 19, 2005, thus extending the deadline to December 16, 2005.

10        Notwithstanding the fact that Bernales filed additional documents on December

11   15, 2005, Bernales still failed to timely file a significant number of required documents,

12   including (1) Debtor's Credit Counseling Certificate, (2) Debtor's Debt Repayment Plan

13   (if any), (3) the current version of the Declaration Concerning Debtor's Schedules

14   (Official Form B6), (4) all of Debtor's payment advices or other evidences of payment

15   for the entire 60-day prepetition period, (5) a Statement of Related Cases (Official Form

16   F 1015-2.1), (6) a Notice of Available Chapters (Official Form B201), (7) a Statement

17   Regarding Assistance of Non-Attorney with Respect to the Filing of Bankruptcy Case

18   (LBR 1002-1), (8) a Declaration and Signature of Non-Attorney Bankruptcy Petition

19   Preparer (Official Form B19A), (9) a Notice to Debtor by Non-Attorney Bankruptcy

20   Petition Preparer (Official Form B19B), and (10) a Disclosure of Compensation of

21   Bankruptcy Petition Preparer.[5] On January 31, 2006, another order to show cause was

22   issued re: dismissal for Debtor's failure to file these required documents. Having failed

23   to cure this defect by the time of the hearing on the order to show cause, and having

24

_____

25        [5]    All of these forms had been available and easily accessible for free at the
website for the U.S. Bankruptcy Court for the Central District of California
26   (http://www.cacb.uscourts.gov/) in the "Chapter 7 Package" section.

1    failed to appear at that hearing, Debtor's case was dismissed on February 16, 2006.

2    This case first came to the court's attention when the Debtor filed a proposed

3    order to extend the filing deadline.  Based on the unusual nature of that document and

4    after a subsequent review of Debtor's file, the court issued an order to show cause re:

5    "Disgorgement of Fees by Bankruptcy Petition Preparer Consumer Credit Services of

6    America, Inc. and Greg S. Bohl" on December 20, 2005.  This order requested that

7    CCSA and Mr. Bohl "explain how the petition was prepared and who gave the Debtor

8    instructions to move for an order extending the time to file the required documents."

9    The order also requested that they "explain who prepared this motion" (meaning the

10   proposed order) and "why Debtor's schedules, Form 22A statement, statement of

11   financial affairs, and employee income record were not timely filed."

12   A hearing was held on January 11, 2006.  Bernales personally appeared and Mr.

13   Bohl appeared telephonically.  CCSA made no appearance.  Although the order to

14   show cause set a January 4, 2006 deadline for written responses, a written response in

15   the form of a declaration was not filed by Mr. Bohl until January 10, 2006, the day prior

16   to the hearing.[6]  At the hearing it was determined what while CCSA and Mr. Bohl may

17   not have been ghostwriting motions for the Debtor, there were strong reasons to

18   suspect that CCSA and Mr. Bohl might have been engaging in the unauthorized

19   practice of law in this case, in violation of 11 U.S.C. § 110(e), and might have violated

20   other provisions of 11 U.S.C. § 110.

21   Determining that an evidentiary hearing would be required, the hearing was

22   continued to February 15, 2006.    Mr. Bohl was invited to file a supplementary

23

24

---

[6]    At the hearing, Mr. Bohl attempted to justify his tardy response by arguing
25   that CCSA rarely receives mail and so they do not check the mailbox very often. Given the
     time-sensitive nature of filing for bankruptcy, as this case amply demonstrates, CCSA is
26   strongly encouraged to change its mail review and pick-up procedures.

1   response if he wished.  The Debtor was instructed to file with the Court the e-mail

2   exchanges between himself, CCSA and Mr. Bohl, which he subsequently did on

3   January 20, 2006.  Upon review of the e-mail exchange and upon this Court's

4   determination that an injunction against CCSA and Mr. Bohl may be appropriate, the

5   hearing on February 15, 2006 was continued to March 15, 2006 to give CCSA and Mr.

6   Bohl time to respond to the court's additional concerns.  CCSA and Mr. Bohl were

7   notified in the order continuing the hearing to be prepared to show cause why an

8   injunction against their operating in the Central District of California should not be

9   issued.  Neither CCSA nor Mr. Bohl filed any additional documents.  The United States

10  Trustee, however, filed a request for judicial notice, which included orders from several

11  other bankruptcy courts enjoining CCSA, Mr. Bohl and their associates from, inter alia,

12  engaging in the unauthorized practice of law and assisting debtors in Texas.

13          At the March 15, 2006 hearing, Mr. Bohl appeared by telephone.  CCSA again

14  did not appear, nor did the Debtor.  The Assistant United States Trustee appeared.

15          Mr. Bohl explained that he is a part-owner and officer of CCSA and that Claudia

16  Fontalvo, another non-attorney, is also a part-owner and officer.  CCSA is incorporated

17  in Florida and is headquartered in Jacksonville, Florida.  They have been in bankruptcy

18  petition preparer business for over three years.  Mr. Bohl argued that there were a lot of

19  bad bankruptcy petition preparers, but that he is not one of them.[7]  He asserted that he

20  and CCSA did nothing wrong, and if anything was done wrong, it was unintentional.

21  ──────────────────

22          [7]     Mr. Bohl contended on the record that he and CCSA are in the process of
    shifting out of the bankruptcy petition preparer business into the business of selling
23  software to help debtors and attorneys complete bankruptcy-related forms.  However, the
    Assistant U.S. Trustee disclosed to the court that similar representations had been made
24  to the Texas bankruptcy courts during hearings on similar orders to show cause.  To date,
    now two months after the March 15, 2006 hearing, neither Mr. Bohl nor CCSA appear to
25  have made any further attempts to leave the bankruptcy petition preparer business.  This
    appears to be one of several misrepresentations Mr. Bohl made to the court, and evinces
26  a fervent desire to keep the business going by any means necessary.

1    Mr. Bohl explained that CCSA uses "bankruptcy filler software" to help debtors

2   complete their bankruptcy petition documents.  He argued that this software simply

3   replicates the official forms and makes it easier for debtors to complete them.

4    The court, Mr. Bohl and the Assistant U.S. Trustee reviewed the remaining facts

5   of Bernales's case.  Of note, Mr. Bohl asserted that he and CCSA never encouraged

6   Bernales to file a motion for extension and were not aware any such motion had ever

7   been filed.  The court and Mr. Bohl discussed the new debt relief agency requirements

8   and how these relate to bankruptcy petition preparers and their duties.  Finally, the

9   court, Mr. Bohl and the Assistant U.S. Trustee discussed in detail the CCSA website.

10   **III.    Discussion**

11    11 U.S.C. § 110 sets forth limits on the conduct of bankruptcy petition preparers

12   in their assistance of debtors in filing cases under Title 11.  As noted above, both CCSA

13   and Mr. Bohl are bankruptcy petition preparers under 11 U.S.C. § 110(a)(1).  Therefore,

14   the limitations set forth in this section apply to their conduct in this case.

15    A.    *Prohibition on Offering Legal Advice*

16    11 U.S.C. § 110(e) expressly prohibits bankruptcy petition preparers from

17   offering legal advice.  "A bankruptcy petition preparer may not offer a potential

18   bankruptcy debtor any legal advice . . . ."  11 U.S.C. § 110(e)(2)(A).  Legal advice, for

19   the purpose of this section, "includes advising the debtor (i) whether (I) to file a petition

20   under this title; or (II) commencing a case under chapter 7, 11, 12, or 13 is appropriate;

21   (ii) whether the debtor's debts will be discharged in a case under this title; (iii) whether

22   the debtor will be able to retain the debtor's home, car, or other property after

23   commencing a case under this title; (iv) concerning (I) the tax consequences of a case

24   brought under this title; or (II) the dischargeability of tax claims; (v) whether the debtor

25   may or should repay debts to a creditor or enter into a reaffirmation agreement with a

26

creditor to reaffirm a debt; (vi) concerning how to characterize the nature of the debtor's

interests in property or the debtor's debts; or (vii) concerning bankruptcy procedures

and rights." 11 U.S.C. § 110(e)(2)(B).  While these areas were all prohibited as a

matter of case law previously, the BAPCPA amendments have now explicitly detailed

them as well in this section, putting bankruptcy petition preparers on greater notice of

what constitutes the unauthorized practice of law.  The above list is neither exclusive

nor exhaustive.  Rather, it is a set of examples explaining what constitutes legal advice.

### 1.    *What Constitutes Legal Advice*

By prohibiting the offering of "legal advice," 11 U.S.C. § 110(e)(2) must be

understood as a general prohibition against the practice of law by bankruptcy petition

preparers, except where otherwise permitted by applicable law.  "[S]tate law is properly

considered in determining whether the unauthorized practice of law has occurred in a

bankruptcy court." *In re Boettcher*, 262 B.R. 94, 96 (Bankr. N.D. Cal. 2001); *see also*

*Taub v. Weber*, 366 F.3d 966, 968 (9th Cir. 2004).  California law is quite explicit: "No

person shall practice law in California unless the person is an active member of the

State Bar." Cal. Bus. & Prof. Code § 6125.[8]  According to case law interpreting this

statute, practicing law means "the doing and performing services in a court of justice in

any matter depending therein throughout its various stages and in conformity with the

adopted rules of procedure." *Birbrower, Montalbano, Condon & Frank, P.C. v. Superior*

*Court*, 17 Cal. 4th 119, 128 (Cal. 1998).  This specifically includes offering "legal advice

. . . whether or not . . . rendered in the course of litigation." *Id.*

Section 110(k), a more seasoned section of the Code, explains that "[n]othing in

---

[8]    Violation of Cal. Bus. & Prof. Code § 6125 is a misdemeanor under Cal. Bus.
& Prof. Code § 6126.  In addition to criminal penalties under section 6126, there are
potential civil penalties under section 6126.5.  A person who engages in the unauthorized
practice of law is also potentially subject to contempt under section 6127.

1    [section 110] shall be construed to permit activities that are otherwise prohibited by law,

2    including rules and laws that prohibit the unauthorized practice of law." 11 U.S.C. §

3    110(k).  Cases have interpreted this section to prohibit the unauthorized practice of law

4    by bankruptcy petition preparers in a variety of different factual situations.  *In re Pillot*,

5    286 B.R. 157 (Bankr. C.D. Cal. 2002) involved an internet website that offered a

6    bankruptcy program to assist debtors to file for bankruptcy.  Among other things, the

7    program made the debtor's exemption choice and provided her with legal advice about

8    the bankruptcy process.  The court found that this was the unauthorized practice of law

9    and imposed sanctions.  In *In re Glad*, 98 B.R. 976, 978 (9th Cir. B.A.P. 1989), the

10   court found that a nonattorney engaged in the unauthorized practice of law by

11   "interview[ing] and solicit[ing] information from the debtor with regard to his financial

12   status and "assist[ing] the debtor in preparation of the bankruptcy schedules."[9]

13       As will also prove relevant to this case, in *In re Powell*, 266 B.R. 450, 452 (Bankr.

14   N.D. Cal. 2001), the court noted that "[a] non-lawyer engages in the unauthorized

15   practice of law when he or she determines for a party the kind of legal document

16   necessary in order to effect the party's purpose."  *See also Boettcher*, 262 B.R. at 96

17   (holding that it was the unauthorized practice of law for a bankruptcy petition preparer to

18   prepare a "fill in the blank" motions to dismiss for a continuance for the debtor).[10]

19       Interpreting legal terms also constitutes the unauthorized practice of law, a point

20   which will prove relevant to the legality of the use of "questionnaires" utilizing simplified

21   _____

22       [9]    *Glad* also noted that a "non-attorney will be subject to the requirements of §
     329 if he engages in rendering 'legal services' to the debtor."  98 B.R. at 977.

23
       [10]    *Boettcher* also noted that "[i]t is of course just as unlawful for a nonlawyer to
24   provide bankruptcy schedules to debtors as any other forms; the only legitimate functions
     a nonlawyer can perform is to type and file forms obtained and completed by debtors." 262
25   B.R. at 97 n.2; *but see In re Herren*, 138 B.R. 989, 994 (Bankr. D. Wyo. 1992) ("Providing
     copies of the Official Forms necessary to filing a petition for bankruptcy relief is a legitimate
26   and necessary service to the public.").

1   language to assist debtors in the filing of their petitions.  In *Taub v. Weber*, 366 F.3d

2   966 (9th Cir. 2004),[11] for example, the court held that a bankruptcy petition preparer

3   engaged in the unauthorized practice of law when he interpreted the terms "market

4   value" and "secured claim or exemption" for a debtor in connection with the completion

5   of bankruptcy forms.  *Id.* at 971; *see also In re Agyekum*, 225 B.R. 695, 702 (9th Cir.

6   B.A.P. 1998) (holding that bankruptcy petition preparer use of a bankruptcy handbook

7   which provided information about the bankruptcy process, information on what to

8   consider when filing bankruptcy and a glossary of bankruptcy terms constituted the

9   unauthorized practice of law).

10      Similarly, "[s]oliciting information from a debtor [by use of a questionnaire] which

11  is then typed into schedules constitutes the unauthorized practice of law." *Agyekum*,

12  225 B.R. at 702; *see also In re McCarthy*, 149 B.R. 162, 166 (Bankr. S.D. Cal. 1992); *In*

13  *re Anderson*, 79 B.R. 482, 485 (Bankr. S.D. Cal. 1987) (paralegal interviewed debtor,

14  solicited information, prepared bankruptcy schedules, advised the debtor of her legal

15  rights vis-a-vis secured collateral and the differences between a Chapter 13 and a

16  Chapter 7 filing, advised the debtor on the necessity to file amendments to her

17  schedules to reflect a tax refund, and selected her exemptions).  More to the point,

18  "[p]lugging in solicited information from questionnaires and personal interviews to a

19  pre-packaged bankruptcy software program constitutes the unauthorized practice of

20  law.  Moreover, advising of available exemptions from which to choose, or actually

21  choosing an exemption for the debtor with no explanation, requires the exercise of legal

22

23      [11]    Although *Taub* applied Oregon law, Oregon's definition of what constitutes
   the practice of law is substantially similar to California's: "[T]he practice of law includes the
24  drafting or selection of documents and the giving of advice in regard thereto any time an
   informed or trained discretion must be exercised in the selection or drafting of a document
25  to the needs of the persons being served . . . *[A]ny exercise of an intelligent choice, or an*
   *informed discretion in advising another of his legal rights and duties*, will bring the activity
26  within the practice of the profession . . . ." *Taub*, 366 F.3d at 969 (citation omitted).

- 12 -

1    judgment beyond the capacity and knowledge of lay persons." *In re Kaitangian*, 218

2    B.R. 102, 110 (Bankr. S.D. Cal. 1998).  The law is clear: "[T]he services of bankruptcy

3    petition preparers are strictly limited to typing bankruptcy forms."  *Id.* at 113.[12]

4              2.    *Whether New BAPCPA Provisions Allow Limited Practice of Law*

5          Mr Bohl suggested that he was simply attempting to comply with certain revisions

6    of the bankruptcy law under BAPCPA and seemed to think that recent changes to the

7    Code may have altered the general prohibition against the unauthorized practice of law

8    by bankruptcy petition preparers.  As discussed below, I hold that the BAPCPA has not

9    changed the general prohibition against the unauthorized practice of law.  If anything,

10   the new Act has made it even more clear that bankruptcy petition preparers are not

11   allowed to engage in the unauthorized practice of law.

12         The new Act explicitly does not preempt state law on the unauthorized practice

13   of law. 11 U.S.C. §§ 110, 526, 527 and 528 all explicitly do not preempt state law on

14   this subject.[13]  Instead, these sections generally incorporate such law.

15

---

16      [12]    The fact that CCSA and Mr. Bohl would also be "legal document assistants"
      under Cal. Bus. & Profs. Code § 6400(c) does not change the fact that they are still
17   prohibited from engaging in the practice of law without a license.  Legal document
      assistants are limited to completing legal documents in a ministerial manner, providing
18   general published factual information, making published legal documents available and
      filing and serving legal documents. *Id.* § 6400(d).  Furthermore, section 6402 explicitly
19   does not sanction, authorize or encourage the practice of law by legal document
      assistants. *Id.* § 6402.
20

21      [13]    11 U.S.C. § 110(k) provides that "[n]othing in [section 110] shall be construed
      to permit activities that are otherwise prohibited by law, including rules and laws that
22   prohibit the unauthorized practice of law."  Similarly, 11 U.S.C. § 526(d) states:

23         (d) No provision of [section 526], section 527, or section 528 shall–
                  (1) annul, alter, affect, or exempt any person subject to such sections from
24             complying with any law of any State except to the extent that such law is
               inconsistent with those sections, and then only to the extent of the
25             inconsistency; or
                  (2) be deemed to limit or curtail the authority or ability–
26                     (A) of a State or subdivision or instrumentality thereof, to determine

1    On the other hand, had the new Act imposed any duties on bankruptcy petition

2    preparers that constitute the practice of law, these duties would be lawfully permitted.

3    Contrary state law would be preempted. However, "[t]he centerpiece of any preemption

4    analysis is congressional purpose. . . . '[A]ny understanding of the scope of a

5    pre-emption statute must rest primarily on 'a fair understanding of congressional

6    purpose.'" *PG & E Co. v. California*, 350 F.3d 932, 943 (9th Cir.2003) (holding that

7    presumption against preemption of generally applicable state law applies in bankruptcy

8    area). "To displace traditional state regulation . . . , the federal statutory purpose must

9    be 'clear and manifest.'" *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544 (1994).

10    The new Act certainly has imposed more requirements on bankruptcy petition

11    preparers, but none of these clearly or manifestly require bankruptcy petition preparers

12    to engage in the practice of law.  With respect to 11 U.S.C. § 110, despite significant

13    statutory changes, such as the new notice requirement under subsection (b)(2),

14    "[n]othing in th[at] section shall be construed to permit activities that are otherwise

15    prohibited by law, including rules and laws that prohibit the unauthorized practice of

16    law." 11 U.S.C. § 110(k).  The new notice requirement in subsection (b)(2) reiterates

17    this point, in that it is required to state "in simple language that the bankruptcy petition

18    preparer is not an attorney and may not practice law or give legal advice." 11 U.S.C. §

19    110(b)(2)(i).  The notice may give examples of advice the bankruptcy petition preparer

20    may *not* give, and must be signed by the Debtor. *Id.* § 110(b)(2)(ii) & (iii).[14]

21    Aside from 11 U.S.C. § 110, the only area of the Code that has changed the

22    

23    _____

          and enforce qualifications for the practice of law under the laws of that
          State; or

24        (B) of a Federal court to determine and enforce the qualifications for
          the practice of law before that court.

25    

26    [14]    Providing debtors with forms that are required to be transmitted under 11
      U.S.C. §§ 110 and 527 does not constitute the practice of law.

1    duties of bankruptcy petition preparers is the "debt relief agency" provisions. *See* 11

2    U.S.C. §§ 526-528. These provisions apply to bankruptcy petition preparers because,

3    under 11 U.S.C. § 101(12A), they are expressly defined as debt relief agencies.

4         Having reviewed these statutory provisions, the only section that comes

5    anywhere close to modifying the general prohibition against the unauthorized practice

6    of law by bankruptcy petition preparers is 11 U.S.C. § 526(a)(3)(B).[15] Under this

7    section, "[a] debt relief agency shall not . . . misrepresent to any assisted person or

8    prospective assisted person, directly or indirectly, affirmatively or by material omission,

9    with respect to . . . the benefits and risks that may result if such person becomes a

10   debtor in a case under this title." 11 U.S.C. § 526(a)(3)(B).[16] It could be argued that

11   this section may provide that, in certain extreme circumstances, a bankruptcy petition

12   preparer may have a duty to explain the benefits and risks of filing bankruptcy,

13   meaning, to this limited extent, bankruptcy petition preparers would be permitted to

14   practice law. As discussed below, however, Congress has indicated through other

15   sections in the new Act that this cannot be what section 526(a)(3)(B) means.

16        Applying the rules of preemption, there is neither a manifest nor clear intent to

17   preempt state law prohibiting the unauthorized practice of law. If anything, the

18   BAPCPA has made it much clearer that bankruptcy petition preparers without exception

19   are prohibited from practicing law. 11 U.S.C. § 110(e)(2) provides, in part, that "[a]

20   bankruptcy petition preparer may not offer a potential bankruptcy debtor any legal

21   _____

22        [15]    11 U.S.C.A. § 527(c) also imposes certain legal duties on "debt relief
     agencies," such as to provide information on "how to provide all the information the
23   assisted person is required to provide under this title pursuant to section 521." However,
     this duty extends only "to the extent permitted by nonbankruptcy law." *Id.* Thus, section
24   527(c) does not impose any such duties on bankruptcy petition preparers.

25        [16]    "Assisted persons" are "any person[s] whose debts consist primarily of
     consumer debts and the value of whose nonexempt property is less than $150,000." 11
26   U.S.C. § 101(3).

1  advice." 11 U.S.C. § 110(b)(2) requires bankruptcy petition preparers to provide

2  debtors with a notice stating "in simple language that a bankruptcy petition preparer is

3  not an attorney and may not practice law or give legal advice." Bankruptcy petition

4  preparers are prohibited from using "the word 'legal' or any similar term in any

5  advertisements, or to advertise under any category that includes the word 'legal' or any

6  similar term." 11 U.S.C. § 110(f). Finally, 11 U.S.C. § 527, one of the "debt relief

7  agency" provisions similarly provides that bankruptcy petition preparers must provide

8  debtors with an additional statement that says: "You are generally permitted to

9  represent yourself in litigation in bankruptcy court, but only attorneys, not bankruptcy

10 petition preparers, can give you legal advice." 11 U.S.C. § 527(b).

11       Given these other statutory provisions, it is clear that whatever 11 U.S.C. §

12 526(a)(3)(B) means, it is not a license to engage in the practice of law. Instead, it

13 appears that Congress was focused on the word "misrepresent." However, for there to

14 be a misrepresentation, there must first be a representation. *See In re Rubin*, 875 F.2d

15 755, 759 (9th Cir. 1989) (describing the elements of fraudulent misrepresentation under

16 11 U.S.C. § 523(a)(2)(A)). Yet, under applicable law, there cannot be a representation.

17 If the bankruptcy petition preparer remains the "mute typist" that law requires him or her

18 to be, then there is no risk of misrepresentation. By contrast, it is only when bankruptcy

19 petition preparers do give legal advice and make legal representations that the risk of

20 direct or indirect misrepresentation arises.[17] Thus, I conclude that no section of the

21 BAPCPA permits bankruptcy petition preparers to engage in the practice of law.

22

23

---

24     [17]    There is an excellent example of such a misrepresentation on CCSA's
website in the FAQ section. *Question*: "Are there any negative consequences to filing

25 bankruptcy?" *Answer*: "Despite the many rumors propagated for years by creditors, debt
collectors, debt counseling organizations and the like for their own self-interest, there are

26 virtually no negative consequences to filing bankruptcy. . . ."

1          3.    *CCSA and Mr. Bohl Improperly Gave Legal Advice*

2              a.    *Filing Fee Advice*

3          CCSA engaged in the unauthorized practice of law in giving the Debtor filing fee

4    advice in its November 22, 2005 e-mail to the Debtor.  This e-mail included certain

5    "emergency bankruptcy documents," including an Application to Pay Filing Fee in

6    Installments (Official Form 3A).  This e-mail reads, in pertinent part, as follows:

7          Include a POSTAL MONEY ORDER (only U.S. Postal Money Orders are
           accepted) or CASHIER'S CHECK in the amount of $274 payable to "Clerk, U.S.
8          Bankruptcy Court" for the court filing fee.  Most bankruptcy courts will allow you
           to pay the filing fee in monthly installments, if necessary.  Please contact your
9          local bankruptcy court at the above telephone number for information about its
           local policy regarding payment of the filing fee.  A fillable Application to Pay Filing
10         Fee in Installments is attached.  Complete the form after speaking to your local
           bankruptcy court clerk as to how the installment fee needs to be paid.
11

12   This is clearly legal advice and, at least in this district, it would be incomplete advice,

13   misleading, and potentially harmful.  Under LBR 1006-1, an individual may apply for

14   permission to pay the filing fee in installments, but only if he or she is "unable to pay the

15   full filing fee."  In addition to a written application, a local rule requires that the

16   application be accompanied by "a declaration under penalty of perjury stating whether

17   the debtor received assistance in preparing the petition and whether the debtor paid

18   anyone for such assistance."  It is extremely rare for an installment fee application to be

19   approved in this district where payment has previously been made to a bankruptcy

20   petition preparer or an attorney.  *See* FRBP 1006(b).  In this case, no such declaration

21   was provided to the Debtor or filed with the Court.  The fact that CCSA couches its

22   language in admonitions to call the clerk does not change the fact that the above

23   paragraph constitutes legal advice.

24         In addition, the Voluntary Petition prepared by CCSA and Mr. Bohl indicated that

25   the filing fee was to be paid in installments.  To the extent that CCSA and Mr. Bohl

26   made this selection for the Debtor without his specific instruction to do so, this is

                                          - 17 -

1    likewise, engaging in the unauthorized practice of law.  This action goes far beyond

2    mere typing and has legal implications.  Here, Bernales believed he had an urgent,

3    time-sensitive need to file bankruptcy.  He received these e-mail instructions and

4    completed forms from CCSA and Mr. Bohl and relied on them as sufficient to allow him

5    to file his fee in installments.  Had the Debtor only been prepared to pay an installment

6    on the date he filed his petition, his petition might have been rejected and, because of

7    this delay, the Debtor could have suffered irremediable consequences.  Fortuitously,

8    this in fact did not happen here.  After he was rejected at the window, he promptly

9    modified his petition and paid his filing fee in full.[18]

10              b.    *"Facesheet Filing"*

11        In the same e-mail as the filing fee advice, CCSA further stated as follows:

12        The attached documents are the only documents required to effectuate your
          bankruptcy filing.  Your bankruptcy will be effective immediately upon filing.  By
13        law, additional bankruptcy documents including but not limited to a Summary of
          Schedules, Schedules A-J, a Statement of Financial Affairs, Statement of
14        Intention, etc. (approximately 30-35 pages) must be filed within 15 days of your
          initial bankruptcy filing.  Please let us know (preferably via e-mail) once you have
15        filed the attached documents with your local bankruptcy court so we'll know when
          your additional documents will be due.  The court clerk will provide you with a
16        deficiency notice informing you as to the 15-day deadline for submitting
          additional documents.

17
          Advising the Debtor which documents he needs to file to effectuate his
18
     bankruptcy is also the unauthorized practice of law.  By providing Bernales with solely
19
     these limited documents, which did not include at least one required declaration, CCSA
20
     and Mr. Bohl set Bernales up for failure.
21
          Providing the Debtor only with "emergency bankruptcy documents" brings up
22

23    _____

24        [18]    The court notes that actual knowledge that a debtor is able to pay the filing
     fee in full when completing these forms, combined with encouragement to apply to pay in
25   installments and provision of the requisite forms, is potentially the subornation of perjury.
     In the Application to Pay Filing Fee in Installments, the Debtor is required to declare that
26   "I am unable to pay the filing fee except in installments."

1    several important issues, the first of which is a "facesheet filing." Encouraging a debtor

2    to file a "facesheet filing" is engaging in the practice of law. How to do such an

3    abbreviated initial filing is not obvious from the Court's website. Instead, it involves "an

4    intelligent choice, or an informed discretion in advising another of his legal rights and

5    duties." *Taub*, 366 F.3d at 969.

6        "Facesheet filing," in particular, carries potentially serious consequences,

7    particularly post-BACPA. Whereas pre-BACPA, the Debtor would likely only be put to

8    the additional risk and expense of having to file a second bankruptcy if he did not file

9    the remaining paperwork in time and his case were dismissed, the situation changes

10    drastically post-BACPA. Under 11 U.S.C. § 362(c)(3), in general, if an individual debtor

11    had a case that was dismissed within the previous year, the automatic stay

12    automatically terminates after only thirty days. The debtor may move to extend the

13    automatic stay, but must show good faith. However, statutorily, "a case is

14    presumptively not filed in good faith . . . as to all creditors, if . . . a previous case under

15    any of chapters 7, 11, and 13 in which the individual was a debtor was dismissed within

16    such 1-year period, after the debtor failed to file . . . documents as required by this title

17    or the court without substantial excuse . . . ." 11 U.S.C. § 362(c)(3)(C)(i)(II)(aa). Mere

18    inadvertence or negligence, in general, are not a substantial excuse. *Id.* Moreover, the

19    debtor must overcome this presumption by clear and convincing evidence.

20        Under normal circumstances, Debtor's case should have and would have been

21    dismissed much earlier than it was. The only reason it was not dismissed earlier was

22    because the clerk's office was backlogged with filings from the "hurricane" of filings that

23    were filed the week preceding October 17, 2005, immediately before the major

24    provisions of the BAPCPA went into effect. If Debtor should file a second bankruptcy,

25    his automatic stay will only last thirty days absent a court order extending it. Debtor

26

- 19 -

1    would be hard pressed to extend the automatic stay by showing his good faith by clear

2    and convincing evidence, since there would be a statutory presumption against him.

3    Moreover, should this second case also be dismissed, Debtor will have no automatic

4    stay at all. *See* 11 U.S.C. § 362(c)(4)(A)(i). Dismissal now has widespread implications

5    under the Code. This factor highlights why the election to engage in a "facesheet filing"

6    is a significant legal decision, and is not a decision that should be encouraged, let alone

7    made, by bankruptcy petition preparers.

8         A second reason why a "facesheet filing" was especially inappropriate in this

9    case was that by engaging in a "facesheet filing," the Debtor, CCSA and Mr. Bohl put

10    off completing Form B22A, the means test calculation form, until some time later. By

11    filing a "facesheet filing," the Debtor inappropriately and prematurely elected to pursue

12    Chapter 7 relief instead of Chapter 13 relief. Because he filed under Chapter 7,

13    however, without due consideration to his monthly income level and expenses, the

14    presumption of abuse arose under 11 U.S.C. § 707(b)(2)(A)(i). While, under 11 U.S.C.

15    § 362(c)(3), dismissal under section 707(b) would not shorten the automatic stay in a

16    subsequent case like a dismissal for failure to file schedules would, dismissal under this

17    section would cause the Debtor to incur numerous unnecessary expenses. In addition

18    to any expenses incurred in filing and maintaining the Chapter 7 case, the Debtor would

19    have to pay, at minimum, filing fees to convert his case to Chapter 13 or to file a new

20    Chapter 13 case. Had all of the documents been prepared at the same time and had

21    CCSA and Mr. Bohl not felt competent enough to make an intelligent decision to file a

22    "facesheet filing," this unfortunate situation might never have arisen. However, because

23    CCSA and Mr. Bohl decided to play lawyer, it did.

24         To make matters far worse, and to take the discussion beyond the purely legal

25    question of whether CCSA and Mr. Bohl engaged in the unauthorized practice of law,

26

1   CCSA and Mr. Bohl completely bungled this matter. The control and timing of turning

2   over the documents to the Debtor for filing was completely in their hands. The Debtor

3   daily begged and pleaded in his e-mails for CCSA and Mr. Bohl to send him his

4   completed documents in time to meet the deadline, and they failed him time and again.

5   Worse, they led the Debtor to believe, to his detriment, that the documents would be

6   ready in no time and there would be no problem. CCSA's website prominently stated:

7   "Consumer Credit Services of America can prepare your Chapter 7 or 13 Official

8   Bankruptcy Forms in as little as one day . . . ." Moreover, CCSA made specific

9   representations to the Debtor by e-mail: "We know what is missing and will get them to

10  you a day or 2 prior to the deadline." In particular, on the date of his deadline, the

11  Debtor e-mailed Mr. Bohl again as to the status of the documents. He got an out-of-

12  office reply: "Your case coordinator, Greg Bohl, has been out on medical leave. A

13  Bankruptcy Questionnaire is attached. Please complete the Questionnaire and return it

14  to us asap via fax . . . . We can complete your bankruptcy documents and e-mail them

15  to you within an hour or so after we receive the completed Questionnaire from you." In

16  Court, Mr. Bohl testified that the Questionnaire is a simplified version of the questions

17  found in the Schedules and Statement of Financial Affairs, and that CCSA uses this

18  Questionnaire to complete their debtors' paperwork. This suggests that despite all

19  assurances they were working on Debtor's paperwork, CCSA and Mr. Bohl put off doing

20  much, if any, of this work until the eleventh hour. This conclusion is bolstered by the

21  fact that the papers, which by their own statements only take an hour to complete, were

22  not ready until December 13, 2005 and were not filed until December 15, 2005,

23  although they were due on December 8. CCSA and Mr. Bohl left the Debtor in a lurch.

24  Mr. Bohl, his primary contact person, was out of the office, but no notice was provided

25  to Bernales of this until he received the e-mail, and apparently there was no backup

26

1   person to assist in filing the remaining papers.  Put simply, CCSA and Mr. Bohl show no

2   signs that they cared, which is especially troubling considering how prejudiced the

3   Debtor would soon be by a dismissal.  Had an attorney conducted himself with the

4   same ineptitude, he or she could have been sanctioned and the debtor would have had

5   recourse to a malpractice policy for any harm or ineptitude caused.

6                           c.      *Motion for Extension of Time*

7           For the sake of completeness, during these delays, CCSA and Mr. Bohl actually

8   did do something to help the Debtor.  They encouraged him to file a motion to extend

9   the deadline to file the remaining paperwork.  While it appears that neither CCSA nor

10  Mr. Bohl actually drafted the motion itself, their mere encouragement of this is also the

11  unauthorized practice of law, and has legal consequences.  Their wholehearted faith in

12  its approval was inappropriate.  The fact that it was filed seems to have fueled their

13  lackadaisical attitude toward timeliness.  The Court very well could have denied the

14  motion to extend the deadline, but it did not.  Notwithstanding the fact that this advice

15  actually helped the Debtor, it was unlawful for CCSA and Mr. Bohl to give it.  Rather,

16  they should have simply provided the Debtor with all of the necessary documents at

17  once.  They should have never meddled with "emergency bankruptcy documents" in the

18  first place.  This way they could have properly limited their role to typing and would

19  never have felt the need to engage in the unauthorized practice of law to dig the Debtor

20  out of a hole that they themselves where a primary force in creating.

21                          d.      *Legal Interpretation of the Deadline*

22          Next, CCSA and Mr. Bohl engaged in the unauthorized practice of law in

23  advising the Debtor what constitutes "15 days" for the purpose of meeting his deadline.

24  Anxious to meet his deadline, the Debtor asked CCSA and Mr. Bohl whether the 15 day

25  deadline means "15 business days or 15 days total including weekends."  Rather than

26

1  simply advise the Debtor to refer to the case commencement deficiency notice, CCSA

2  and Mr. Bohl gave the Debtor their interpretation of FRBP 9006 . They wrote: "15

3  calendar days, including weekends. Exclude the day your initial documents were filed.

4  If the last day falls on a weekend or holiday, the due date is extended to the next court

5  business day. Courts usually allow 1 or 2 extra days." For the most part, CCSA and

6  Mr. Bohl happen to be correct. However, had they been wrong and had the Debtor

7  relied on their interpretation, the Debtor could have been prejudiced, and without the

8  same remedies he might have against an attorney.

9                    e.    *Advice Regarding the Debtor's Duties*

10          CCSA also, in one of their e-mails, provided the Debtor with a list of what the

11  Debtor is required to do under 11 U.S.C. § 521. In this short list, they advised the

12  Debtor to (1) file evidence of income with the Court within 15 days, and (2) provide the

13  Chapter 7 Trustee with a copy of the Debtor's most recent federal income tax return at

14  least seven days before the meeting of creditors. This list is legal advice. Although the

15  above are, indeed, duties under 11 U.S.C. § 521, this list is incomplete. Notably, CCSA

16  and Mr. Bohl never mentioned that the Debtor is required to file the section 342(b)

17  certificate. This is a certificate Congress now requires demonstrating that the debtor

18  was aware of which bankruptcy chapters were available and the services available from

19  credit counseling agencies. *See* 11 U.S.C. §§ 342(b), 521(a)(1)(B)(iii). In fact, it

20  appears that they never provided the Debtor with the required section 342(b) notice in

21  the first place. In addition, CCSA and Mr. Bohl did not advise the Debtor to file a

22  statement of the amount of monthly net income or a statement disclosing any

23  reasonably anticipated increase in income or expenditures. *See* 11 U.S.C. §

24  521(a)(1)(B)(v) and (vi). Again, had the Debtor relied on this as a complete list, he

25  would have done so at his detriment. Rather than take the advice of a Florida-based

26

1    bankruptcy petition preparer, who is not entitled to give legal advice and is unfamiliar

2    with this district, the Debtor should have been referred to the list of forms in the Chapter

3    7 Package on the Court's website.

4                           f.    *Means Test Advice*

5         On December 5, 2005, the Debtor sent an e-mail to Mr. Bohl, stating: "[Y]ou

6    were suppose to let me know if we needed to switch to a Chapter 13 if I didn't qualify

7    for the Means Test for the Chapter 7, any luck on this?"  He received a reply stating:

8    "We will review your file regarding the means testing and get back to you when we send

9    your additional documents.  We should be e-mailing them to you by tomorrow morning."

10   On November 13, 2005, the date the documents were finally complete and sent to the

11   Debtor for filing, CCSA sent the Debtor its assessment of the means test:

12          According to the monthly income and expenses you provided, and after
            subtracting all allowable deductions as alowed [*sic*] under the bankruptcy laws,
13          you and your wife have over $900 left over each month.  You definitely don't
            qualify for Chapter 7.  If you convert to Chapter 13, your monthly payment will be
14          over $900 per month.  Your combined annual gross income is over $114,000 per
            year.  Your best bet is for us to contact the company that served the garnishment
15          and try to work out a monthly payment plan.

16   After being questioned by the debtor as to why the numbers on the means test form

17   (Form 22A) were different from those on Schedule I, CCSA sent the following reply:

18          Schedule J lists your actual claimed expenses.  However, the new "means
            testing" provisions of the new bankruptcy laws disregards [*sic*] your actual
19          claimed expenses and only allow standard deductions for various categories of
            living expenses, regardless of what your actual expenses are. [¶] For example,
20          you might claim $250 a month on home improvements/repairs on Schedule J,
            but the new bankruptcy laws only allow you a certain amount ($1,400 monthly for
21          example for a family of 3) for food, clothing, housekeeping items and
            miscellaneous living expenses. [¶] You might claim $200 a month for
22          entertainment expenses, but the new means testing does not allow that.  You
            might claim $600 monthly for a private school for your child, but the means
23          testing provisions do not allow for a private school. [¶] Form B22A lists your
            combined gross monthly income and then subtracts standard allowable
24          expenses in certain categories.  That's why it is different from your actual
            expenses as claimed on Schedule J.  Since your combined gross annual income
25          is well over the median family income for your state, the new bankruptcy laws
            disregard your actual expenses as claimed on Schedule J and use the
26

                                          - 24 -

1   authorized deductions as reflected on Form B22A. According to the new means
2   testing laws, you have over $900 left over each month after legally allowable
    deductions from gross income.

3       Explaining the meaning, rationale and workings of a bankruptcy statute, rule or

4   form constitutes the practice of law. This is particularly so with respect to untested,

5   uninterpreted, novel and unfamiliar statutes, rules and forms. The application of the

6   means test under 11 U.S.C. § 707(b)(2) is one of the most discussed new provisions of

7   the BAPCPA. Most attorneys do not agree on how this section should be applied in

8   practice, and little in the way of judicial interpretation has been issued so far. Thus, any

9   attorney providing advice on whether a debtor is subject to the Chapter 7 means test

10  would do so with reservations at this point. That a non-attorney not under the

11  supervision of any licensed attorney would consider venturing into this area in any way

12  is extremely disturbing. It also, following a consistent pattern, constitutes the

13  unauthorized practice of law.

14              g.      *Inclusion of All Creditors*

15      The e-mail in which CCSA attached the prepared copy of the petition for the

16  Debtor also included the following language: "After filing, you may add or delete

17  creditors, if necessary, or make any other changes or amendments that you wish. You

18  will have plenty of time to do so." This is an extraordinary piece of legal advice. Adding

19  or deleting creditors can raise significant issues in a case. Under FRBP 2002(a),

20  creditors in a chapter 7 case are entitled to twenty days' notice of, inter alia, (1) the

21  meeting of creditors, (2) a proposed use, sale or lease of property of the estate, (3) a

22  hearing on approval of compromise or settlement, (4) the hearing on the dismissal of

23  the case, (5) certain requests for compensation or reimbursement, and (6) the time for

24  filing proofs of claims. Lightly adding and deleting creditors could pose major problems

25  to adequate notice of such items.

26

1    Deleting creditors, or adding them too late in the day, is extremely likely to

2    prejudice creditors. They might have no notice of the bankruptcy. They could miss

3    their deadline to file their proof of claim. They might not be aware of a critical hearing.

4    And, most significantly for certain creditors, they might also miss the deadline for filing a

5    nondischargeability complaint. Under FRBP 4007, nondischargeability complaints may

6    only be filed up to the sixtieth day after the first day set for the meeting of creditors. If

7    the creditors do not receive the appropriate notices, they will not meet the deadline.

8    Advising the Debtor, with the words that he had "plenty of time" to add or delete

9    creditors, not to be concerned about accuracy or timeliness was reckless at best.

10    These words could have lured the Debtor into not making a timely search for all

11    creditors and indeed not adding them as appropriate. This would have the effect of

12    possibly prejudicing both them and the Debtor later.[19]

13                    h.    *Questionnaire*

14    The Questionnaire itself requires little discussion. Mr. Bohl explained that CCSA

15    uses the Questionnaire to simplify the language of the required forms to assist CCSA

16    translate the answers into the appropriate Schedules and the Statement of Financial

17    Affairs. Under applicable case law, this is the unauthorized practice of law. "Soliciting

18    information from a debtor [by use of a questionnaire] which is then typed into schedules

19    constitutes the unauthorized practice of law." *Agyekum*, 225 B.R. at 702. Notably, the

20    creation and use of the Questionnaire requires interpretation and understanding of the

21    meaning of the questions in the Schedules and Statement of Financial Affairs.

22    Bankruptcy petition preparers are prohibited from giving explanations or providing

23

24    ─────────────────────

25    [19]    In the words of Judge Alan Jaroslovsky, "[t]he actions of [CCSA and Mr. Bohl]
       constitute a classic example of how bumbling non-lawyers can cause serious problems for
       their 'clients' even in very simple bankruptcy cases." *In re Powell*, 266 B.R. 450, 451
26    (Bankr. N.D. Cal. 2001).

1    definitions of terms. *Taub*, 366 F.3d at 971.

2                 i.    *Selection of Exemptions*

3           The Debtor testified in Court that he did not select his exemptions. Instead, Mr.

4    Bohl stated that he and CCSA did. They apparently have a list of applicable state and

5    federal exemptions and enter the one that seems to fit the best and yields the greatest

6    amount. This, like the Questionnaire, requires little discussion, because it also is clearly

7    the practice of law. The choice of exemptions involves an analysis of the debtor's

8    assets and how they can be protected under various exemption choices. "[A]dvising of

9    available exemptions from which to choose, or actually choosing an exemption for the

10    debtor with no explanation, requires the exercise of legal judgment beyond the capacity

11    and knowledge of lay persons." *Kaitangian*, 218 B.R. at 110; *see also In re Pillot*, 286

12    B.R. 157 (Bankr. C.D. Cal. 2002).

13                 j.    *Website*

14           Lastly, the Court turns to CCSA's website. Because the Debtor primarily relied

15    on the information provided on the CCSA website and because internet-based

16    bankruptcy petition preparers seem to be proliferating, it is worth noting in some detail

17    the many issues raised by the text of the CCSA website. While Mr. Bohl revised and

18    promised to revise further the website text during these proceedings, at the time

19    Bernales accessed the site, it was chock full of both legal advice and inaccurate

20    information in its Frequently Asked Questions section.[20]

21           For example, CCSA gives advice generically on whether certain debts are

22    nondischargeable. "Can my creditors object to my bankruptcy discharge?" "Creditors

23    rarely have grounds to object to your bankruptcy discharge and almost never do unless

24

25          [20]    Although this fact has no bearing on the Court's decision in this case, this
26    Court takes note of the fact that Mr. Bohl and CCSA have made little to no revisions to their
website despite the helpful recommendations by both the Court and the U.S. Trustee.

1  a particular debt was fraudulently incurred." The website discourages debtors from

2  hiring attorneys, irrespective to the specific facts of their case. "Do I need an attorney

3  to file bankruptcy?" "No. After you file bankruptcy, you will simply need to meet with a

4  bankruptcy trustee. A typical trustee meeting lasts about 1-3 minutes and you do not

5  need to be represented by an attorney. Individuals without attorneys filed an estimated

6  510,000 successful bankruptcies in the United States last year." The website even

7  goes so far as to offer procedural advice. "If I have been served with a summons in a

8  civil case, am I required to appear in court?" "No. A court summons is an official

9  notification in a civil case that informs a defendant that a lawsuit has been filed against

10 him or her. A defendant is not required to attend any scheduled court hearing or

11 pretrial conference unless the defendant has a legal defense that he or she wants to

12 present to the court. If the defendant fails to appear in court, the case will be

13 uncontested and a court judgment will be entered against him or her by default.

14 However, if the defendant subsequently files bankruptcy, the court judgment will be null

15 and void under section 524 of the United States Bankruptcy Code and the debt will be

16 discharged." And the list goes on and on.

17        All of this generic advice can make a huge difference in an individual case and

18 be extremely harmful. It far exceeds the limited role of the typist. Worse, there are no

19 disclaimers recommending that debtors get specific advice in their individual cases.

20 Quite the opposite – the website discourages debtors from going to attorneys,

21 regardless of the complexity of their individual situations. Mr. Bohl's and CCSA's

22 livelihood appears to depend on this. The theme seems to be to lure debtors into using

23 CCSA and then try to help them quickly slip through the system before anybody

24 notices. This is practicing law in its worst and sloppiest form.

25        This Court wishes to make clear that it is explicitly not making a finding that

26

1  CCSA or Mr. Bohl have engaged in the unauthorized practice of law by merely

2  providing legal information to debtors through its website.  Mr. Bohl asserted that the

3  information on CCSA's website is analogous to legal literature, which he contends he is

4  lawfully permitted to distribute without a license to practice law under the First

5  Amendment.  Putting aside the question of whether distribution of legal information

6  constitutes the unauthorized practice of law, it is clear that much of the information on

7  the website is nonetheless "fraudulent, unfair, or deceptive" under 11 U.S.C. § 110(i)(1).

8  As section 110(i)(1) is a valid regulation of commercial speech, any First Amendment

9  concerns raised by Mr. Bohl are not implicated here.  As discussed in depth in *In re*

10  *Doser*, 412 F.3d 1056, 1062-64 (9th Cir. 2005), the regulation of bankruptcy petition

11  preparers under section 110(i) complies with the four-part test used to evaluate the

12  protection due commercial speech under *Central Hudson Gas & Elec. Corp. v. Pub.*

13  *Serv. Comm'n*, 447 U.S. 557, 562-63 (1980).  This discussion does not address

14  accurate, non-misleading information provided as general information on a website.

15      B.    *Other Violations of § 110 Involving Lack of Required Disclosures*

16          1.    *11 U.S.C. § 110(b)(2)(B)*

17      Before preparing any document for filing or accepting any fees from the Debtor,

18  CCSA and Mr. Bohl were required to provide the Debtor with written notice (Form

19  B19B) informing him "in simple language that a bankruptcy petition preparer is not an

20  attorney and may not practice law or give legal advice." 11 U.S.C. § 110(b)(2)(B).  The

21  form "may contain a description of examples of legal advice that a bankruptcy petition

22  preparer is not authorized to give." *Id.* Finally, this form "shall be signed by the debtor,

23  and under penalty of perjury, by the bankruptcy petition preparer" and be filed with the

24  petition. *Id.* Unfortunately, none of this, apparently, was ever done.  Had CCSA and

25  Mr. Bohl provided Form B19B to the Debtor, one might imagine that the entire

26

1    unauthorized practice of law problem might have been abated, since the notice would

2    make the Debtor aware of the limitations on CCSA and Mr. Bohl.  The failure to provide

3    this form is significant and had potentially harmful consequences.

4        **2.**    *11 U.S.C. § 110(h)(2)*

5        Finally, 11 U.S.C. § 110(h)(2) requires that "[a] declaration under penalty of

6    perjury by the bankruptcy petition preparer shall be filed together with the petition

7    disclosing any fee received from or on behalf of the debtor within 12 months

8    immediately prior to the filing of the case, and any unpaid fee charged to the debtor. . .

9    ."  This, however, was not done.  Bernales testified in court that he paid CCSA $195,

10    but this was never disclosed.  Thus, CCSA and Mr. Bohl violated this section also.

11    C.    *Sanctions*

12        **1.**    *Fines or Damages to be Paid to the Debtor and U.S. Trustee*

13        "All fees charged by a bankruptcy petition preparer may be forfeited in any case

14    in which the bankruptcy petition preparer fails to comply with this subsection or

15    subsection (b), (c), (d), (e), (f), or (g)."  11 U.S.C. § 110(h)(3)(B).  In light of CCSA's and

16    Mr. Bohl's violations of 11 U.S.C. § 110(e) and other provisions of section 110, this

17    Court orders the disgorgement of all fees paid by the Debtor.

18        In addition, under 11 U.S.C. § 110(i), "[i]f a bankruptcy petition preparer violates

19    this section or commits any act that the court finds to be fraudulent, unfair, or deceptive,

20    . . . after notice and a hearing, the court shall order the bankruptcy petition preparer to

21    pay to the debtor (A) the debtor's actual damages; (B) the greater of (I) $2,000; or (ii)

22    twice the amount paid by the debtor to the bankruptcy petition preparer for the

23    preparer's services; and (C) reasonable attorneys' fees and costs in moving for

24    damages under this subsection."  11 U.S.C. § 110(i)(1).  In order for 11 U.S.C. §

25    110(h)(3)(B) not to be a superfluous provision, this Court understands 11 U.S.C. §

26

1  110(i)(1) to provide supplementary damages to the Debtor in addition to fee

2  disgorgement under subsection (h)(3)(B).  Since Debtor has not proved actual

3  damages, this Court will order an additional fine of $2,000 to be paid to the Debtor.

4      Under 11 U.S.C. § 110(l)(1), "[a] bankruptcy petition preparer who fails to comply

5  with any provision of subsection (b), (c), (d), (e), (f), (g), or (h) may be fined not more

6  than $500 for each such failure."  Here, although CCSA's and Mr. Bohl's failures have

7  been extensive, this Court believes an additional fine of $2,000 against CCSA and Mr.

8  Bohl to be a sufficient sanction for their conduct in this case.  Pursuant to 11 U.S.C. §

9  110(l)(4), this amount shall be paid to the U.S. Trustee.

10      CCSA and Mr. Bohl shall be jointly and severally liable for all of the above fines

11  and the fee disgorgement.  CCSA and Mr. Bohl are ordered to disgorge such fees and

12  pay such fines by no later than June 30, 2006.  They are further ordered to provide

13  proof of payment to the court within ten (10) days after disgorging their fees and paying

14  the above fines.  Failure to comply with the these terms may result in a finding that Mr.

15  Bohl and CCSA are in civil contempt, which could result in assessment of fines and/or

16  penalties, sanctions, incarceration, or further injunctive relief.

17      3.    *Injunction*

18      At the March 15, 2006 hearing, the United States Trustee filed with the court a

19  request for judicial notice, which detailed prior related misconduct by CCSA, Mr. Bohl

20  and others.[21]  The first exhibit to the request for judicial notice was an order entered on

21

22  _____

    [21]    At the March 15, 2006 hearing, before Mr. Bohl had been made aware that
23  the court had copies of these orders, Mr. Bohl insinuated that he had never had any trouble
    with any other court before.  After he was aware that the court knew of these orders, he
24  openly misrepresented the substance of both of these orders and the facts on which they
    were based, notwithstanding the clarity and scope of the above orders.  He stated these
25  orders were because of a purported prohibition against legal how-to books and a $50 cap
    on what you can pay to bankruptcy petition preparers, neither of which are mentioned in
26  the orders.

1    September 17, 2004 in the U.S. Bankruptcy Court of the Southern District of Texas

2    entitled Order for Disgorgement, Payment of Fine and Permanent Injunction Prohibiting

3    Greg Bohl, Garo G. Anadolian and Consumer Credit Services of America from acting as

4    Bankruptcy Petition Preparers in the State of Texas. The order specifically found that

5    CCSA, Mr. Bohl and others had engaged in the unauthorized practice of law and had

6    violated 11 U.S.C. § 110. In light of that, the order permanently enjoined them from

7    acting as bankruptcy petition preparers in Texas, ordered a disgorgement of fees and

8    find them $200, payable to the United States Trustee.

9        The request for judicial notice also included an order entered on September 29,

10    2004 in the U.S. Bankruptcy Court of the Western District of Texas. This order

11    specifically found that Mr. Bohl, CCSA and their agents and employees had been

12    engaging in (1) advising persons concerning the filing of a chapter 7 bankruptcy case,

13    (2) advising persons or assisting persons in the selection of exemptions, (3) advising

14    persons as to what property or debts should be listed, or soliciting information from

15    them to reformulate onto the petition, schedules and statement of financial affairs, (4)

16    advising persons how to list debts as secured, unsecured or priority, (5) defining terms

17    for persons such as executory contracts, leases, exemptions and reaffirmation, (6)

18    directing persons to portions of a statute or other materials for explanations of

19    exemptions, how to schedule property and what will happen in a bankruptcy case, (7)

20    collecting fees for acts and conduct which constitute the practice of law, which Mr. Bohl

21    and CCSA were not licensed to practice, (8) giving advice or rendering any service

22    requiring the use of legal skill or knowledge. Based on the foregoing, the court, *inter*

23    *alia*, ordered a disgorgement of fees, fined CCSA and Mr. Bohl $500, and permanently

24    enjoined them "from rendering legal advice and preparing or assisting in the preparation

25    of any document to be filed in any bankruptcy case in any bankruptcy court in the

26

1   Western District of Texas, whether over the internet, via e-mail, computer software or

2   any other electronic transmission, or by any other means."

3        Given the extensive violations in this and prior cases and, an injunction is also

4   appropriate under 11 U.S.C. § 110(j). Under this section, the Court may "enjoin a

5   bankruptcy petition preparer from engaging in any conduct in violation of this section or

6   from further acting as a bankruptcy petition preparer." Under *Demos v. Brown (In re*

7   *Graves)*, 279 B.R. 266, 272 (9th Cir. B.A.P. 2002), this Court may issue such an

8   injunction *sua sponte*. This Court may grant such an injunction against CCSA and Mr.

9   Bohl if it finds that they have "engaged in conduct in violation of this section or of any

10  provision of this title." 11 U.S.C. § 110(j)(2)(A)(i)(I). As shown from this and prior

11  cases, CCSA and Mr. Bohl have continuously engaged in extensive violations of 11

12  U.S.C. § 110, and likely other sections of the Code as well.[22] They have also shown a

13  total lack of remorse or reflection, rather Mr. Bohl objects to "being treated like a

14  criminal." As such, I find that CCSA's and Mr. Bohl's wrongful conduct could not be

15  halted by mere injunction against improper conduct itself. Thus, this Court permanently

16  enjoins CCSA and Mr. Bohl from further acting as bankruptcy petition preparers in the

17  Central District of California, whether over the internet, via e-mail, computer software or

18  any other electronic transmission, or by any other means.

19  **IV.    Conclusion**

20       It is apparent that, at best, CCSA and Mr. Bohl are confused about what the

21  practice of law is. While completing the Official Bankruptcy Forms is an extremely

22  difficult task for an individual with little or no knowledge of bankruptcy laws, it is clear

23  

_____

24      [22]    For the sake of completeness, I should note that, in addition to their violations
of 11 U.S.C. § 110, there also appear to have been violations of 11 U.S.C. §§ 527 and 528.
25  It appears that disclosures were not provided to the Debtor, as required by 11 U.S.C. §
527(a) and (b). Also, a review of CCSA's website reveals that it failed to provide the
26  required "debt relief agency" disclaimer, as required by 11 U.S.C. § 527(a)(4).

1  that CCSA and Mr. Bohl, no matter what their self-perceived knowledge of bankruptcy

2  may be, are not qualified under the law to assist debtors by offering legal advice.

3      CCSA and Mr. Bohl did even what the most preeminent bankruptcy petitioner in

4  Florida would be forbidden to do: they practiced law in California.  If anything, this case

5  exemplifies why competent legal counsel is important: they are familiar with local rules

6  and procedures, they are in close proximity with the client if he or she needs

7  assistance, and they can give debtors the legal advice that they need.  This is not so

8  with bankruptcy petition preparers like CCSA and Mr. Bohl.  Because of their

9  unfamiliarity with the law and procedure of this district, their lack of proximity to the

10  Debtor and their inability to give competent legal advice, their actions ultimately had

11  unfortunate consequences for Bernales, whose case was dismissed for failure to file all

12  of the required documents, including any credit counseling certificate.  Although the

13  Court sympathizes with indigent debtors, this is no justification to turn a blind eye to the

14  unauthorized practice of law by bankruptcy petition preparers, especially as they often

15  tend to cause far more harm than good.

16      In conclusion, this Court has determined the appropriate sanction to be (1)

17  disgorgement of fees, (2) a fine of $2,000 to be paid to the Debtor, (3) a fine of $2,000

18  to be paid to the U.S. Trustee, and (4) a permanent injunction prohibiting CCSA and Mr.

19  Bohl from further acting as bankruptcy petition preparers in the Central District of

20  California, whether over the internet, via e-mail, computer software or any other

21  electronic transmission, or by any other means.

22  **IT IS SO ORDERED.**

24  DATED:  6/19/06

MAUREEN A. TIGHE
United States Bankruptcy Judge

1

## CERTIFICATE OF SERVICE BY MAIL

2

3          I certify that a true copy of this **ORDER** was served on _JUN 1 9 2006_
to the parties listed below:

4

5   **Debtor**
Ceaser Gaite Bernales
6331 Teesdale Ave.
6   North Hollywood, CA 91606

7   **Bankruptcy Petition Preparer**
Consumer Credit Services of America, Inc.
8   2750-305 Race Track Rd., #140
Jacksonville, FL 32259

9
Greg S. Bohl
10  2750-305 Race Track Rd., #140
Jacksonville, FL 32259

11
**Chapter 7 Trustee**
12  Diane Weil
1925 Century Park East, Ste. 1600
13  Los Angeles, CA 90067

14  **U.S. Trustee**
Attn: Jennifer Braun
15  Office of the U.S. Trustee
21051 Warner Center Lane, Ste. 115
16  Woodland Hills, CA 91367

17

18

19  Dated:    JUN 1 9 2006          _Jewell M. Williams_
20                                  _____
DEPUTY CLERK

21

22

23

24

25

26

- 35 -